Rick SIPES and Jamie Sipes, Appellants,

v.

GENERAL MOTORS CORPORATION, Delco Electronics Corporation, J.O. Williams Motors, Inc., Morton International, Inc., and Siemens Electronic Limited, the successor in interest to Siemens Bendix Automotive Electronics Limited, and Morton International, Inc., Appellees.

No. 06–96–00026–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 8, 1996.

Decided May 14, 1997.

Rehearing Overruled June 3, 1997.

Frank Supercinski, Longview, for appellants.

Michele R. Sowers, J. Karl Viehman, Hartline, Dacus, Dreyer, Kern, Dallas, for General Motors, Delco and Williams Motors.

Marcus A. Carroll, Deborah J. Race, Ireland, Carroll, Kelley, Tyler, for appellee Siemens Electronics Limited.

Kevin J. Dunne, Sedgwick, Defert, Moran, Arnold, San Francisco, CA, for appellee Morton International.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Ricky and Jamie Sipes appeal from a summary judgment granted to General Motors Corporation, Delco Electronics Corporation, J.O. Williams Motors, Inc., Morton International, Inc., and Siemens Electronic, Limited.

The Sipeses, purchasers and owners of a new Pontiac Firebird, filed suit as plaintiffs below, seeking damages from an alleged failure of the Firebird's airbag to deploy. After purchasing the Firebird, Jamie Sipes received injuries to her arms, hands, upper body, and neck in an accident in which the airbag failed to deploy. The Sipeses sued for strict liability, negligent design, negligence, and breach of warranty claims under the Texas Deceptive Trade Practices and Consumer Protection Act.[1]

On appeal, the Sipeses contend (1) that the trial court erred in granting the summary judgment because the summary judgment proof did not negate as a matter of law an essential element of their causes of action and (2) that the trial court erred in denying their motion for continuance.

### SUMMARY JUDGMENT STANDARDS

A party moving for summary judgment has the burden of establishing both the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 23

---

1. Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon 1987 & Supp.1997).

(Tex.1990). A defendant movant can prevail by establishing conclusively against the plaintiff [2] one factual element of each theory the plaintiff pleaded. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed issue of material fact precluding summary judgment, an appellate court views all evidence in the light most favorable to the nonmovant and resolves all doubts in the nonmovant's favor. *Nixon v. Mr. Property Management,* 690 S.W.2d 546 (Tex.1985). To obtain summary judgment, a defendant need not show that the plaintiff cannot succeed on any theory conceivable; the defendant is only "required to meet the plaintiff's case as pleaded." *Cook v. Brundidge, Fountain, Elliott & Churchill,* 533 S.W.2d 751, 759 (Tex.1976). If a summary judgment motion involves the weight of showings, the motion should not be granted. *Bridges v. Farmer,* 483 S.W.2d 939 (Tex.Civ. App.-Waco 1972, no writ) (citing Tex.R.Civ.P. 166a). Therefore, we do not weigh the amount or strength of evidence offered by each side. If any theory advanced in a motion for summary judgment supports the granting of summary judgment, a court of appeals may affirm, regardless of whether the trial court specified the grounds on which it relied. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623 (Tex.1996).

General Motors Corp., Delco Electronics Corp., J.O. Williams Motors, Inc., and Morton International, Inc. filed a joint motion for summary judgment. Siemens's separate motion for summary judgment included similar grounds, plus an additional ground that we shall address separately. Throughout this opinion, it must be kept in mind that in a summary judgment proceeding against the plaintiff, movants (defendants) must conclusively negate one of the essential elements of the defect or causation as a matter of law.

Although the Sipeses have not pleaded their case with specificity, the joint movants have not sought under Rules 90 and 91 of the Rules of Civil Procedure to require more specific pleadings. Thus, we will address the various theories under the general pleadings made by the Sipeses.

## THE COLLISION

### Side Impact

The Sipeses seem to take the position that the airbag should have deployed whether there was a side or frontal impact.[3] One of the reasons the movants relied on to obtain the summary judgment was that the airbag was not designed to deploy in a side impact collision and that the collision in question was a side impact to the Firebird. The summary judgment proof was undisputed on the point that the airbag was not designed to deploy unless there was a frontal or near-frontal collision. (Affidavit of movants' expert Garry S. Bahling, and owners' manual.)

The movants offered testimony that the Supplemental Inflatable Restraint System (SIR) was not designed to deploy in side impact collisions because deployment in these collisions would be unlikely to help reduce injuries and in fact might increase the injuries because the SIR deploys longitudinally whereas the principle direction of force in a side impact collision is lateral. (Bahling's affidavit).

The Sipeses offered no summary judgment proof in response to the movants' proof that the system was not designed to deploy in a side impact and would not benefit the driver

2. The Supreme Court of Texas approved proposed changes to Rule 166a(c)(i) of the Texas Rules of Civil Procedure to include the following:

(i) No-Evidence Motion. After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

The proposed rule will be published in the June 1997 Bar Journal and is scheduled to become effective September 1, 1997. See also Notes and Comments under the proposed rule change.

3. The Sipeses' petition stated, "Even though the contact of the other car was at various locations of the 1992 Pontiac Firebird, and was of such force and velocity, where said airbag should have deployed, it completely failed to inflate or deploy."

even if it had deployed in a side impact. The Sipeses offered no airbag expert to show that the airbag was designed to deploy in a side impact. In fact, the Sipeses attached to their summary judgment response material from General Motors stating that the SIR was not designed "to inflate during rear or side impacts." In her affidavit, Jamie Sipes said that if she had known that the airbag would not deploy in this accident when severe force and damage was inflicted to the front of her automobile, she would not have bought it.

### Frontal Impact

To be entitled to a summary judgment on the basis that there was no frontal impact, the movants must show conclusively as a matter of law that there was no frontal impact. They seek to do so by expert opinion.

■■■ Opinion testimony can rise no higher than the facts upon which it is based. *See Bell v. Bell,* 248 S.W.2d 978 (Tex.Civ.App.-Amarillo 1952, writ ref'd n.r.e.). Opinion testimony cannot be based upon the assumption of an unproven fact. *Golleher v. Herrera,* 651 S.W.2d 329 (Tex.App.-Amarillo 1983, no writ). The movants offered summary judgment proof, through affidavits of witnesses, including the opinions of their experts, that this was a side collision.

4. The joint appellees base this contention on the following excerpts from her deposition:
    Q: So at the time that the impact happened, you should have been going straight ahead, correct?
    A: That's correct.

The appellees contend that Jamie Sipes admitted in her deposition that Brent McKnight struck her Pontiac on the side.[4] In her deposition, she did not say that McKnight struck her on the side. In her affidavit opposing summary judgment she said that "severe force and damage [was] inflicted to the front of [the] Pontiac," and that the collision caused "severe damage to the front of the said Pontiac." If a nonmovant's deposition and affidavit opposing summary judgment provide a basis for conflicting inferences, a fact issue arises. *Randall v. Dallas Power & Light Co.,* 752 S.W.2d 4 (Tex.1988). If Jamie Sipes's deposition answers implied that McKnight struck her on the side, then her affidavit definitely provided a basis for conflicting inferences. This does not prevent the proof from giving rise to a fact issue, if any portion disputes the movants' versions of the facts. It was undisputed that the cars were traveling in perpendicular paths, but in such a situation it is possible that the collision itself could be a frontal or near-frontal collision as to the Sipeses' vehicle.

Further summary judgment proof attached to the Sipeses' response included this photograph of the vehicle after the collision:

    Q: Which would be north, correct?
    A: That's correct.
    Q: And you would be perpendicular to the westbound lane of traffic, correct?
    A: That's correct.

Also, included in the exhibits was the following drawing by McKnight, which he made during his deposition. The drawing shows that Vehicle 1 (the Sipeses' vehicle) collided with Vehicle 2 (McKnight's vehicle) at a position on the right front of the Sipeses' vehicle.

**150**

The Sipeses also attached to their response the following engineering drawing, provided by General Motors in discovery. The drawing shows the window of deployment.

Figure 1 - Restraint Devices

| | |
|---|---|
| 1 | DEPLOYED AIR BAG |
| 2 | KNEE BOLSTER |
| 3 | SEAT BELT |

95 6227-91

Figure 2 - SIR System "Deployment Window"

Figure 3 - Deployment Loop

## COMPONENT DESCRIPTION

### DERM

NOTICE: Do not open the DERM case for reason. Touching the connector pins or sol components may cause electrostatic discl damage. Repair of a faulty DERM replacement only.

Another function of the DERM is electrical system diagnostics. The DERM is utilized in conjunction with the resistors in the Arming Sensor, Discriminating Sensors and Resistor Module. These resistors make it possible for the DERM to detect circuit and component faults within the deployment loop. The DERM monitors the voltage drop across each component within the loop during normal non deployment conditions. If the monitored voltages fall outside of expected limits, the DERM will indicate a fault through the storage of a malfunction code and the illumination of the "INFL REST" Warning Lamp.

The DERM (Diagnostic Energy Reserve Modu is designed to perform the following functions in the SIR system:

1. Energy Reserve, The DERM maintains a 36 Volt Loop Reserve (36 VLR) energy supply to provide deployment energy for a few seconds when the vehicle
2. Malfun diagnos compon

In the next drawing, this window of deployment has been overlaid on McKnight's drawing of how the collision occurred. This combined evidence indicates the collision was in the deployment window.

Lay witnesses can testify about how the impact occurred. Jamie Sipes's lay testimony, the photograph, and the drawing are enough to present some summary judgment proof that the collision was a frontal or near-frontal collision as to the Sipeses' vehicle. The movants therefore have not proved conclusively as a matter of law that the impact was not a frontal or near-frontal collision. Bahling's general conclusion that there was no defect is predicated primarily on there being a side impact to the Sipeses's vehicle and that the force of the impact was not sufficient. These material underlying facts are in dispute. Thus, the movants are not entitled to summary judgment on the ground that there was not a frontal impact.

## The Threshold for Deployment

The movants also offered summary judgment proof through their expert, Bahling, that the forces in the impact were insufficient to trigger the designed deployment of the airbag. Specifically, Bahling testified that the airbag was "designed to deploy in only those moderate to severe frontal and near frontal collisions in which the driver *could* receive serious or life-threatening injuries." (Emphasis added.) Bahling had been the senior staff analysis engineer for General

Motors for ten years and testified he had "developed a specialized knowledge and expertise with respect to safety restraint systems and [was] familiar with the design and performance of the supplemental inflatable restraint system (SIR) for the subject vehicle, the 1992 Pontiac Firebird." As part of his analysis, he viewed the vehicle driven by McKnight, photographs of the Sipeses' vehicle, and the accident site. He testified that he had reviewed information retrieved from the diagnostic energy reserve module (DERM) from the Sipeses' vehicle, the accident report filed by investigating officer Eric Brevard, the medical records pertaining to Jamie Sipes, and the depositions of Jamie Sipes, Laurie McKnight, and the investigating officer.

Bahling opined that Jamie Sipes's injuries were not serious or life-threatening. The expert's conclusion implies that a neck injury requiring surgery for a fragmented disk *could* not be serious or life-threatening. (By his own test, he does not require that the occupant actually incur an injury to the degree of being serious or life-threatening, but only that the occupant could have received a serious life-threatening injury in such a collision.) He also concluded that the airbag system was not designed to prevent "soft tissue injuries." [5]

■ Jamie Sipes testified that she received severe injuries to parts of her upper body, including her neck, that were to receive protection from the airbag. Her injuries included a herniated, fragmented disk. In *Royal Indemnity Co. v. Kennedy*, 426 S.W.2d 615, 617 (Tex.Civ.App.-Fort Worth 1968, writ ref'd n.r.e.), the orthopedic surgeon explained that many of the most disabl-

ing back injuries are soft tissue injuries. Whether the present injury may be classified as a soft tissue injury or not, the nature of the injury created a fact question concerning whether this type of injury was severe or life threatening.

Bahling did not set forth any standard for deciding how great the force must be to deploy the airbag, such as some measurement of the impact or the speed at which the vehicles were traveling.[6] (McKnight testified he was going sixty miles per hour.)

The Sipeses attached to their summary judgment response a portion of the General Motors owners' manual stating that "the 'airbag' system is intended to inflate only in moderate and severe frontal crashes." This portion does not refer to the severity or type of injuries sustained.

The movants urge that the DERM, which is a control mechanism for the airbag system and records data on the actions of the system, was examined by Bahling and showed that the airbag system was not malfunctioning and that there was not a collision in which the airbag should have deployed. Certainly, this is strong evidence if it is shown that the DERM itself is functioning properly, but it is not irrefutable evidence that conclusively establishes a fact as a matter of law in the face of other contradictory evidence. Our judicial system has never accepted computers or DERMs to decide ultimate issues in lieu of courts and juries.

Based on the evidence of the extent of the injury and nature of the collision, including the damage to the vehicle, we find that the movants have not proven as a matter of law that the force and impact were insufficient to trigger the designed deployment of the air-

**5.** "Soft tissue injury" is an undefined medical phrase sometimes used as a catchall for injuries that are not bone injuries and would not show up on x-ray. *Kay v. Hanover Ins. Co.*, 677 A.2d 556 (Me.1996); *but see Le Blanc v. Grand Isle Shipyard, Inc.*, 676 So.2d 1157 (La.App. 1st Cir.1996). Because the term could include a severe injury to vital organs, the term does not necessarily denote that the injury is less severe. *See, e.g., Todd v. Dabkowski*, 148 N.J.Super. 146, 372 A.2d 350, 351 (1977) (stating that a collapsed lung and ruptured bowel arguably may be confined solely to soft tissue and citing a New Jersey statute as defining soft tissue injury to include sprains, strains, and tears to muscles, tendons, ligaments, and cartilage); *DiFranco v. Pickard*, 427 Mich. 32, 398 N.W.2d 896 (1986).

**6.** For example, in the case of *Perry v. Mercedes Benz*, 957 F.2d 1257 (5th Cir.La.1992) (cited in Christine M. Condon, *Products Liability: Defective Motor Vehicle Air Bag Systems*, 39 A.L.R. 5th 267, 280 (1996)), the manufacturing expert testified that the airbag system in that case was designed to deploy upon an impact equal to or greater than twelve miles per hour against a rigid barrier.

bag or that there was no defect in the product. Therefore, the movants are not entitled to a summary judgment on this basis.

### Causal Connection and the Issue of Defectiveness

The movants contend that their summary judgment proof shows that no causal connection exists between the Sipeses' alleged damages and the alleged defect. The appellees predicate this argument on their contention that the airbag functioned properly in not deploying. The extent to which this contention is based on the underlying disputed fact issue of whether the airbag should have deployed under the circumstances of the accident is discussed above. The causal connection is to some extent dependent upon a determination of these underlying fact issues.

Bahling states in his affidavit that the airbag deploys longitudinally. Thus, a fact finder could conclude that when an airbag deploys, it would prevent a passenger from pitching forward and receiving injuries that might result from that type of force.

Bernard Patten, Jamie Sipes's doctor, testified that if the airbag had inflated, it would have prevented Jamie's neck flexion and prevented or lessened her injuries. Dr. Patten testified that her injuries were consistent with a very powerful physical force on the front end of the automobile. Although Dr. Patten was not qualified as an accident reconstruction expert and could not offer testimony to show how the collision occurred, medical testimony is generally accepted in Texas to show that an injury is compatible with certain types of impacts. *See Hyundai Motor Co. v. Chandler*, 882 S.W.2d 606, 612–13 (Tex.App.-Corpus Christi 1994, writ denied).

■ The defect does not have to cause the collision precipitating the injury. *Turner v. General Motors Corp.*, 584 S.W.2d 844, 848 (Tex.1979). For the general legal concept, see Jeffrey F. Ghent, Annotation, *Liability of Manufacturer, Seller, or Distributor of Motor Vehicle for Defect Which Merely Enhances Injury from Accident Otherwise Caused*, 42 A.L.R.3d 560 (1972). A manufacturer can be held strictly liable for a defect

that produces injuries even if the defect did not cause the accident. *Turner*, 584 S.W.2d at 848. Because the Sipeses raised a fact issue concerning whether the collision was within the window of deployment and met the threshold for deployment, and because there was testimony that deployment would have prevented or lessened Jamie Sipes's injuries, the appellees did not prove as a matter of law that there was no causal connection.

### THE NEED FOR EXPERT TESTIMONY

■ The movants take the position that the Sipeses must have expert testimony to prove a product defect, citing *Lujan v. Tampo Mfg. Co.*, 825 S.W.2d 505, 508–10 (Tex. App.-El Paso 1992, no writ), and *Fitzgerald v. Caterpillar Tractor Co.*, 683 S.W.2d 162, 163–64 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.). In these cases, the courts did not hold that in *all cases* a plaintiff needs expert testimony to establish a product defect. As the Texas Supreme Court said in *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991), and *Republic National Leasing v. Schindler*, 717 S.W.2d 606, 607 (Tex.1986), an expert's affidavit can support summary judgment if the subject matter *is such that a fact finder would be guided solely by the opinion of the testimony of experts* if the evidence is clear, positive, direct, otherwise credible and free from contradiction and inconsistencies, and could have been readily controverted. Issues may arise on technical matters of design and engineering that would be beyond evidence that lay witnesses with no expertise in these fields could offer. But that depends on the issue in each case. On a subject matter in which the fact finder would not be required to be guided solely by the opinion testimony of experts, lay testimony may be permitted. The fact finder may accept lay testimony over that of experts. *McGalliard v. Kuhlmann*, 722 S.W.2d 694 (Tex.1986).

Furthermore, we must add that the expert's opinion must rely on the proven facts shown in the case on trial, *Golleher*, 651 S.W.2d 329, and the expert testimony must be comprised of more than conclusionary statements. *Lara v. Tri–Coastal Contrac-*

*tors,* 925 S.W.2d 277 (Tex.App.-Corpus Christi 1996, no writ).

The Sipeses initially designated an expert witness and then withdrew that designation. We find nothing in the rules or case law, nor has counsel suggested any source, that would permit a court on a motion for summary judgment to anticipate what might occur at the actual trial of the proceeding. We cannot base the upholding of a summary judgment upon anything except the movants fulfilling their burden in the proof in the summary judgment proceeding.

### SPECIFICITY

The movants also cite *Hernandez v. Nissan Motor Corp.,* 740 S.W.2d 894 (Tex.App.-El Paso 1987, writ denied). The opinion in *Hernandez* does not clearly set forth the specific allegations. The *Hernandez* case is often quoted for the proposition that "[t]he mere fact that an accident occurred is not sufficient proof that the automobile was defective." 740 S.W.2d at 895. We do not argue with this general proposition, but when a specific mechanism does not function as it is designed, it is under seal, and there is no evidence suggesting that anyone has tampered with it since it left the manufacturer, that is circumstantial proof of a defect. As discussed below, a strict liability case does not require a showing of how the product became defective. If a product injures a consumer because it fails to function properly, the consumer does not have to allege or show a violation of a specific duty of care. *O'Neal v. Sherck Equipment Co.,* 751 S.W.2d 559, 562 (Tex.App.-Texarkana 1988, no writ).

■ It is not necessary to prove a manufacturer's specific act of negligence, but only that a defective condition unreasonably dangerous to the user or consumer caused physical harm to the user or consumer. *O'Neal,* 751 S.W.2d at 562. Strict liability eliminates the necessity of proving negligence. *Id.* Negligence evaluates the product supplier's conduct; strict liability focuses on the product's condition. *Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867 (Tex.1978).

Strict liability does not require a specific showing of how the product became defective. *McDevitt v. Standard Oil Co.,* 391 F.2d 364 (5th Cir.1968). In a classic case in which a consumer found a putrefied big toe in a plug of chewing tobacco, the consumer was not required to prove how the big toe got there or whose toe it was. *Pillars v. R.J. Reynolds Tobacco Co.,* 117 Miss. 490, 78 So. 365 (1918), cited in *Lartigue v. R.J. Reynolds Tobacco Co.,* 317 F.2d 19, 34 (5th Cir.1963). That is the nature of products liability. This rule evolved because a consumer is not in a position to know the manufacturing process and how the defect might have occurred. *See McDevitt,* 391 F.2d 364. Thus, an ordinary product user is in no position to come forward with evidence pinpointing the act of negligence responsible for the user's injuries. *See id.* The consumer ordinarily is ignorant of both the product's intricacies and its maker's activity. *See* David P. Griffith, *Products Liability—Negligence Presumed: An Evolution,* 67 TEX.L.REV. 851, 875 (1989). The rule that a consumer does not have to show specifically how a product became defective is also based on a consumer's right to receive a safe product from the manufacturer. *One who sells a defective product is subject to liability for physical harm caused to the ultimate user, even if the seller exercised all possible care in the product's preparation or sale.* *Gonzales,* 571 S.W.2d 867. Courts presume a breach of a duty of due care as would be required in a negligence case; therefore, the injured party does not have to prove a breach. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 444 (Tex.1989).

■ If the plaintiff has no evidence of a specific design defect or manufacturing defect, he may offer evidence of the product's malfunction as circumstantial proof of the defect. *General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 349–50 (Tex.1977). The testimony of a product's user or operator about the circumstances of the event complained of has been held sufficient to establish the product's alleged malfunction. *See Wernimont v. International Harvester Corp.,* 309 N.W.2d 137 (Iowa.Ct.App.1981); *Garrett v. Nobles,* 102 Idaho 369, 630 P.2d 656 (1981). Frequently, expert testimony is essential to establish a design defect if the design is not blatantly defective. *See Huddell v. Levin,* 537 F.2d 726 (3d Cir.1976).

■ The Sipeses offered some summary judgment proof that the airbag failed to deploy in a situation in which it was designed to deploy and that Jamie Sipes suffered serious injury because of that failure. This evidence was sufficient, without the necessity of expert testimony, to raise a fact issue about whether there was a manufacturing defect.

## DESIGN DEFECT

A design defect exists if a safer alternative design existed and "the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery."

■ A plaintiff can show that a safer alternative design was feasible by showing the scientific and economic capacity to develop the safer alternative. *Kindred v. Con/ Chem, Inc.*, 650 S.W.2d 61, 62 (Tex.1983). The movants relied on Bahling's affidavit to conclusively negate a design defect. Relevant to the SIR's design, Bahling's affidavit stated the following:

> The SIR in the 1992 Pontiac Firebird, as in other vehicles, is designed to deploy in only those moderate to severe frontal and near frontal collisions in which the driver could receive serious or life threatening injuries. The SIR is not designed to reduce the risk of these injuries. The SIR is not designed to prevent the soft tissue type injuries which are claimed by Ms. Sipes ... The SIR is designed to deploy in moderate to severe, frontal or near frontal collisions. It is designed not to deploy in less severe frontal impacts or side impacts like the impact involved in this case.... SIRs are not designed to deploy in side impact collisions because deployment in these collisions would be unlikely to help reduce injuries. The SIR deploys longitudinally whereas the principal direction of force in a side impact collision is

lateral. The SIR deploys with great speed and force and it could cause injuries if an occupant is too close to it when it deploys. As a result, the SIR is only designed to deploy when the severity of the crash and direction of impact is such that its deployment is likely to provide some benefit....

■ Bahling's affidavit basically stated that the SIR functioned as designed and explained why the SIR, as designed, does not deploy in side impacts. The movants offered no proof, however, to negate conclusively either their capacity to develop a safer alternative design [7] or to negate that a safer alternative design would have prevented or significantly reduced the risk of Jamie Sipes's injury; therefore, they are not entitled to summary judgment on the issue of a design defect. The Texas Legislature has added a revision to the Texas Civil Practice and Remedies Code concerning design defects.[8] This statute did not take effect until shortly after the collision in the present case occurred.

## FAILURE TO WARN

■ The Sipeses do not specifically plead failure to warn, but their pleading says that all named defendants "are hereby sued in strict liability and tort." A marketing defect such as a failure to warn occurs when a defendant knows or should have known of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use. *Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978).

Under strict liability, one may impute to the manufacturer constructive knowledge of the hazardous condition of the product. *See* 1 M. STUART MADDEN, PRODUCTS LIABILITY § 10.3 (2d ed.1988). However, RESTATEMENT (SECOND) OF TORTS § 402A cmt. J (1965)

---

7. As defined by the statute cited above.

8. "[S]afer alternative design" means a product design other than the one actually used that in reasonable probability:

   (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

   (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

   TEX.CIV.PRAC. & REM.CODE ANN. § 82.005(b) (Vernon Supp.1997).

states that the seller has an obligation to inform the consumer of hazards of which the seller either knew or should have known at the time of the initial sale. Where there is a hazard and a feasible means of its abatement by dissemination of warnings or instructions, the seller will be liable for failing to do so. PRODUCTS LIABILITY § 10.3. RESTATEMENT (SECOND) OF TORTS § 402A cmt. J provides that a duty to warn arises when directions or warnings are required in order to prevent the product from being unreasonably dangerous.

The four types of dangers which the San Antonio Court of Appeals hold to require a warning are (1) a risk or danger inherent in the design of the product; (2) foreseeable dangers or risk of harm from unintended use of the product; (3) risk or dangers that affect only a limited number of users susceptible to a danger in the product; and (4) unavoidably unsafe products. *USX Corp. v. Salinas,* 818 S.W.2d 473 (Tex.App.-San Antonio 1991, writ denied).

An explanation of the contentions of the Sipeses is contained in the answer to Interrogatory No. 10, in which they stated that they "should have been warned that the airbag would not deploy in a severe or moderate frontal crash and plaintiffs would not receive airbag protection for their upper bodies." In all products, there is a possibility of a fabrication manufacturing defect, and the law does not require that every product state that there is a possibility that the product will not function properly. The only category of warnings that this fact situation might fall in is the first type requiring a warning for risk or danger inherent in the design of the product. As stated earlier, this warning must be brought about by a condition about which the seller knew or should have known at the time of the initial sale. The Sipeses have not developed any summary judgment proof along those lines.

This, however, does not shift the burden from the movants in a summary judgment proceeding. In the present case, the movants offered no summary judgment proof or contentions to negate that they knew or should have known of a potential risk of harm presented by the airbag or that

they marketed it without adequate warning of the danger or without providing instructions for safe use. The only mention in the movants' motion for summary judgment about failure to warn is the following statement: "The affidavit of Plaintiffs provide (sic) absolutely no evidence of a product defect. The affidavit simply establishes that had Plaintiffs been warned that the air bag would not deploy in this accident, then they would not have purchased it." A movant must establish entitlement to summary judgment on the issues expressly presented to the trial court, and the court cannot grant a summary judgment on a cause of action not especially addressed in the motion for summary judgment. *Chessher v. Southwestern Bell Telephone Co.,* 658 S.W.2d 563, 564 (Tex. 1983). Except for Siemens, the movants have not sufficiently addressed failure to warn to be entitled to summary judgment on that theory. Siemens offered summary judgment proof by way of the Al Davenport affidavit that the sensors, which it may have manufactured, are not conspicuous to the user of the automobile. The crash sensors are found in the bumper of the vehicle, and a warning placed on the sensors would not be seen by a consumer in the ordinary use of an automobile. As to the warnings in the written material provided to the consumer, this is put together by the manufacturer who ultimately assembles the automobile, and Siemens would be in no position to compel the warnings to be included in that material. Therefore, a partial summary judgment should be upheld as to only Siemens on the issue of warnings.

## WARRANTIES

The Sipeses also allege breach of warranty under the DTPA. The overwhelming majority of products liability cases based on warranty are not only influenced but controlled by the Uniform Commercial Code. 1 M. STUART MADDEN, PRODUCTS LIABILITY § 5.1 (2d ed.1988). The warranty remedies pertinent to products liability are express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose. TEX.BUS. & COM.CODE ANN. §§ 2.313–2.315 (Vernon 1994).

◼ An express warranty requires some affirmative representation by the seller.[9] The Sipeses never said that any particular person made a statement to them about the airbag, but rather stated their general understanding of the functioning of the airbag. The material furnished by the manufacturer, however, suggested that the airbag would deploy upon a severe frontal impact. This amounted to a representation of the airbag's function. The fact finder could find in the present case that there was a severe frontal impact. Such a finding could be a basis for a breach of express warranty. Therefore, movants are not entitled to a summary judgment on this theory of recovery.

◼ In a products liability case, the implied warranty of merchantability is breached if the product was defective when it left the manufacturer's or seller's possession and was unfit for the ordinary purposes for which it is used because of a lack of something necessary for adequacy. *Hyundai Motor Co.*, 882 S.W.2d at 612. The defect in an implied warranty of merchantability case means the condition of the goods that, because of a lack of something necessary for adequacy, renders them unfit for the ordinary purpose for which they are used. *Plas–Tex*, 772 S.W.2d at 444. In strict products liability, "defect" means a condition of the product that renders it unreasonably dangerous. *Id.* In a case involving whether there was express or implied federal preemption, the court made the following general statement involving the automobile restraint system: "The consumer's demand of the manufacturer is that the chosen option of a passive belt system should be reasonably effective for the intended use. A restraint system should restrain. If it does not, it is defective and liability attaches." *Alvarado v. Hyundai*, 908 S.W.2d 243, 253 (Tex.App.-San Antonio 1995, no writ).

◼ The contention in the present case is that the airbag system failed to restrain as it was designed to do and thus was not fit for the ordinary purpose for which such a product is to be used. *The movants produced*

Bahling's affidavit to show that the ordinary purpose of the airbag was to deploy upon a frontal or near-frontal impact in which the driver could receive serious or life-threatening injuries. As previously discussed, the Sipeses raised a fact question concerning whether the impact was one in which the airbag ordinarily was designed to deploy. Therefore, the movants failed to conclusively establish this element against the Sipeses.

◼ In a breach of implied warranty of merchantability, the consumer is not necessarily required to produce direct evidence of the cause of the defective condition or the improper function. *Plas–Tex*, 772 S.W.2d 442. Rather, the consumer may satisfy this burden by showing that a product functioned improperly under normal use. *See Gonzales*, 571 S.W.2d 867. Circumstantial evidence can establish that an automobile component was defective when it left the automobile manufacturer's control. *Darryl v. Ford Motor Co.*, 440 S.W.2d 630, 632–33 (Tex.1969).

To show that the airbag was not defective when it left General Motors's possession, the movants offered Bahling's affidavit saying that the airbag functioned as it was designed to function. As discussed above, the Sipeses raised a fact issue on this element. Therefore, the movants have failed to conclusively negate breach of the implied warranty of merchantability. The movants are not entitled to a summary judgment on the foregoing warranty contentions.

◼ Warranty of fitness for a particular purpose arises if the seller has reason to know of a particular purpose for which the goods are acquired and that the buyer is relying on the seller's skill or expertise in selecting the goods. The "particular purpose must be a particular nonordinary purpose." *Miles v. Ford Motor Co.*, 922 S.W.2d 572, 587 (Tex.App.-Texarkana 1996, ). "The ordinary purposes for which goods are used are those included in the concept of merchantability and go to uses that are customarily made of the goods." *Id.* In the present case, the Sipeses were acquiring the airbags only for

---

**9.** Under Tex.Bus. & Com.Code Ann. § 2.313 (Vernon 1994), "[a]ny description of the goods which is made part of the basis of the bargain creates an

express warranty that the goods shall conform to the description."

the general purpose for which they are designed. Therefore, they have not contended a situation in which a particular purpose would arise and this theory is not a part of this litigation.

### NEGLIGENCE

■ The Sipeses pleaded negligence as an alternative ground for recovery. To prove negligence, a plaintiff must show that the manufacturer failed to use ordinary care in the design and production of the product. *Gonzales,* 571 S.W.2d 867.

The Sipeses did not allege a specific violation of duty of due care. They simply made a general allegation of negligence. The joint movants, however, have not obtained a court ruling pursuant to Rules 90 and 91 of the Texas Rules of Civil Procedure for more specificity of these pleadings; therefore, this general ground of negligence suffices for raising the issue.

In their motion, the movants sought to shift the burden under the negligence theory by saying what the Sipeses must prove, but the movants did not offer summary judgment proof to negate breach of duty of care and thus are not entitled to summary judgment on that basis. The movants submitted an interrogatory to the Sipeses specifically asking about the violations of the duty of due care. The Sipeses objected to this interrogatory, and there was never an answer or ruling concerning that question. Pursuant to Texas Rule of Civil Procedure 168(6), such an objection defers the answer until the court conducts a hearing and rules on the matter. Thus, this failure to answer the interrogatory cannot be used against the Sipeses. Although the Sipeses did not demonstrate a specific complaint about the manufacturer's behavior, the joint movants did not negate it as a matter of law.

■ The movants have not contended in their motion for summary judgment that they had no duty to the Sipeses. They have urged that there was no causation or damages resulting from the failure of the airbag to deploy. We have addressed the principles of causation and damages in an earlier section, and that discussion would be applicable to negligence, as well as to strict liability. The movants have not shown themselves entitled to summary judgment on negligence.

### SIEMENS'S ADDITIONAL GROUND

■ In addition to grounds covered generally by the previous discussion, Siemens takes the position that a component manufacturer who did not design the system and whose finished product conforms to the manufacturer's design standard is not liable for a fabricated defect. This contention is well founded in law. *Miller v. Bock Laundry Mach. Co.,* 568 S.W.2d 648 (Tex.1977). Products liability actions have been recognized against the manufacturer of component parts. See list of cases in 59 TEX.JUR.3D *Products Liability* § 54 (1988).

■ Siemens offered summary judgment proof that it did not design the system, and the Sipeses did not counter that proof. Therefore, Siemens was entitled to partial summary judgment on any allegations of design. The fact that Siemens did not design the system, however, does not prove as a matter of law that this particular product met the manufacturer's standards and that there was no defect in the sensors that caused the airbag to fail to inflate. As previously discussed, under a strict products liability theory, the Sipeses were not required to specifically show failure of duty of due care.

Siemens relied on the Sipeses' answer to an interrogatory to support its position that the manufactured product conformed to the specifications:

> Plaintiffs assume that the component manufacturer of the sensors in the airbag system of the Pontiac met the design specifications for airbag sensors and cars assembled by General Motors. Unless further discovery refutes the lack of quality control and inspection of sensors by General Motors or discloses that the sensors do not meet design specifications, Plaintiffs, at this time assume, the sensors meet design specifications.

In their answer, the Sipeses did not purport to state factual information. This was not an offer of proof, but rather the Sipeses

took the position that they would concede this point unless further discovery revealed otherwise. When the Sipeses answered these interrogatories, they had scheduled depositions of defendants' experts. To constitute an admission, this answer would have to be unequivocal. *See Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex.1993). The Sipeses reserved the right to change their assumption upon further discovery; therefore, the answer was not unequivocal.

Siemens's expert, Al Davenport, also filed an affidavit concerning the airbag sensor. His affidavit stated that he had not inspected the sensors in the Firebird involved in this case. His concluding paragraph said the following:

> At this time, I am not aware of any defect in the way the airbag sensor was manufactured, assembled, designed, or marketed and it is my opinion that the manufacturing process and quality control procedures enacted by both Siemens and General Motors render the possibility of a manufacturing or assembling defect to be highly unlikely.

Davenport opined that a defect was highly unlikely, but he had not examined the specific sensors involved, and his testimony did not prove as a matter of law there was no defect. The expert, Bahling, bases his opinion primarily upon his view that the collision involved a side impact to the Sipeses's vehicle and that it was not a severe impact. As stated earlier in the opinion, this is an underlying fact that must be proven before this opinion could be accepted.

Siemens was entitled to partial summary judgment on the allegations of design defect. Siemens did not prove as a matter of law, however, that it was entitled to summary judgment on the manufacturing defect issues; therefore, it was not entitled to summary judgment on that portion of the action against it.

### FAILURE TO RESPOND TO REQUEST FOR ADMISSIONS

The Sipeses urge that matters that should have been answered in their request for admissions be deemed as admitted as a matter of law. Pursuant to Rule 169(1) of the Texas Rules of Civil Procedure, although a court order is not required for deeming admission when a party fails to respond timely, in order to include this as a part of the trial court's basis for summary judgment, it should be referenced or set forth in the motion or response for summary judgment (Tex.R.Civ.P. 166a(c)). In the response for summary judgment, the Sipeses stated the following:

> Untimely and evasive answers, and answers and non-answers to request for admissions to the Defendants show a manufacturing defect of the airbag system in the Sipes Pontiac that is a producing cause of damages to the Plaintiffs. Circumstances herein clearly show the defect is in the airbag system when the Pontiac leaves the control and possession of Defendants.

The Sipeses' response states near the beginning in Section 8 that they are attaching to, making a part of, and incorporating for all intents and purposes a number of items including the following:

> "Untimely or evasive answers, and answers and/or non-answers of Defendants to Plaintiffs request for admission and interrogatories."

■ This documentation was not attached. Without setting out the request for admissions by attaching them to the motion for summary judgment or by referencing them, the Sipeses have failed to show that they were relying on deemed admissions, and specifically what deemed admissions, in responding to the motion for summary judgment. Rule 166a(c) provides that, "Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." The Sipeses' response does not sufficiently provide the trial court with information about what facts they are relying upon from the deemed admissions. Therefore, this is not properly referenced for summary judgment purposes.

Furthermore, by the opinion and judgment the Sipeses have prevailed in getting the summary judgment set aside and remanded for a new trial. Even if the deemed admissions were considered, it would not affect the

outcome of this case. The Sipeses did not file a motion for summary judgment; therefore, the most relief they can receive on this appeal is to have the cause reversed and remanded for a new trial. This point of error is overruled.

### DENIAL OF MOTION FOR CONTINUANCE

The Sipeses' second point of error is that the trial court erred in denying their motion for continuance. The granting or denial of a motion for continuance is within the trial court's sound discretion and will not be disturbed except for a clear abuse. *Ross v. Arkwright,* 892 S.W.2d 119, 125 (Tex. App.-Houston [14th Dist.] 1994, no writ); *Verkin v. Southwest Center One,* 784 S.W.2d 92, 96 (Tex.App.-Houston [1st Dist.] 1989, writ denied) (citing *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986)). An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, the appellate court determines the trial court's decision clearly was arbitrary and unreasonable, or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The appellate court must view the evidence in the light most favorable to the trial court's action and indulge in every presumption supporting the trial court's action. *See, e.g., Abcon Paving, Inc. v. Crissup,* 820 S.W.2d 951, 954 (Tex.App.-Fort Worth 1991, no writ). The "fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate" an abuse of discretion. *Downer,* 701 S.W.2d at 242.

After a party files a summary judgment motion, the nonmovant may request a continuance if, by verification or affidavit, the nonmovant shows an inability to obtain essential summary judgment evidence justifying opposition to summary judgment. TEX.R.CIV.P. 166a. A trial court properly can deny a motion for continuance in certain situations. *Tenneco, Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640 (Tex.1996).

First, if the record is developed enough, a trial court may determine that no discovery is necessary before granting summary judgment. *National Union Fire Ins. Co. v. CBI Indus., Inc.* 907 S.W.2d 517, 521 (Tex.1995). If the facts necessary to support summary judgment are developed enough, no further discovery is needed, even if it might raise a fact issue. *Tenneco,* 925 S.W.2d 640.

The Sipeses contend it was an abuse of discretion to deny their motion for continuance to take the testimony of defense experts to further controvert the summary judgment motions and prepare for trial, citing *Verkin,* 784 S.W.2d 92.

The Sipeses filed their original petition July 23, 1993. The motion for summary judgment was filed August 21, 1995. The Sipeses filed their motion for continuance September 22, 1995. The hearing was set for September 22, 1995. This would appear to have been adequate time for the Sipeses to seek and obtain discovery. Two factors complicate that issue. Depositions of defense experts had been scheduled for August 30, but cancelled by General Motors because General Motors' expert was ill, according to the motion for continuance. Also, Siemens was not brought into the suit as a defendant until March 1995.

On remand, the Sipeses will have an opportunity to depose the defense experts; therefore, we shall not address this point of error further.

Siemens contends that where this Court has upheld the granting of a partial summary judgment, those matters should be severed and rendered. Our rulings do not dispose of all issues concerning any parties in this litigation or any separate causes of action. All rulings upholding portions of the summary judgment involve variations of theories arising from the same fact situation. We instruct the trial court to follow these determinations, but we believe severance at this point would further complicate this litigation.

### CONCLUSION

Appellants are entitled to a partial summary judgment that there was no warranty for a particular purpose. Siemens is also

entitled to partial summary judgment on design defects and failure to warn. On all other issues, the summary judgment is reversed and remanded to the trial court.