**Affirmed and Memorandum Opinion filed February 26, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00877-CV

## SERGIO A. GONZALEZ & SHERICE GONZALEZ, Appellants

## V.

## HUNTING ENERGY SERVICES, INC., HUNTING ENERGY SERVICES DRILLING TOOLS, INC. AND HUNTING TITAN, INC., Appellees

On Appeal from the 190th District Court
Harris County, Texas
Trial Court Cause No. 2015-01808

## M E M O R A N D U M   O P I N I O N

Appellants appeal the trial court's grant of a traditional and no-evidence summary judgment motion in favor of appellees on appellants' negligence, product liability, and warranty claims. For the reasons explained below, we conclude that the trial court did not err and affirm.

## BACKGROUND

Sergio A. Gonzales alleges that in June 2014, he was working for GE Oil & Gas – Wire Line Division at an oil rig as part of a crew that was perforating a well. Gonzalez had just removed a setting tool from the hole and was in the process of releasing the pressure that was built up in the pressure chamber of the setting tool when the setting tool malfunctioned.[1] Specifically, a component part known as a "retainer nut," "plug," or "disk retainer" seated in the pressure chamber came loose, releasing a high-pressure charge that injured Gonzalez.

Gonzalez, along with his wife Sherice Gonzalez, filed suit against numerous defendants including Hunting Energy Services, Inc., Hunting Energy Services Drilling Tools, Inc., and Hunting Titan, Inc. (collectively Hunting). Gonzalez alleged that Hunting manufactured, designed, and marketed the setting tool and its component parts, including the retainer nut. Gonzalez sought damages based on claims of negligence, gross negligence, products liability, and breach of the implied warranties of merchantability and fitness for a particular purpose.[2]

Hunting filed a combined traditional and no-evidence motion for summary judgment, asserting that the evidence conclusively established that Hunting did not manufacture, design, or market the retainer nut and therefore could not be liable under a products liability theory. Hunting also moved for a no-evidence summary judgment on Gonzalez's claims for negligence, gross negligence, products liability, and the implied warranty claims on the basis that, among other things, Gonzalez had no evidence that Hunting manufactured the retainer nut (and thus owed no duty),

---

[1] The record reflects that a setting tool is used to perforate a well prior to hydraulic fracturing. Once it has perforated the well and is brought back to the surface, it is necessary to "bleed" the tool, or release the pressure, which is done by turning the retainer nut which is seated in the pressure chamber.

[2] On appeal, Gonzalez has expressly waived the implied warranty claims.

2

and no evidence that the retainer nut was defective at the time it was manufactured or that it reached Gonzales without a substantial change in its condition. Gonzalez filed a response to the motion and an amended petition adding a failure to warn claim. Hunting filed a reply to Gonzalez's response, but did not address Gonzalez's newly alleged failure to warn claim. Both parties raised evidentiary objections to the other's evidence.

On September 13, 2017, the trial court granted Hunting's summary judgment motion without specifying the grounds for its ruling. The court made no written rulings on the parties' evidentiary objections. After the remaining named defendants were dismissed or nonsuited, the trial court's judgment became final and appealable.

## ANALYSIS OF THE ISSUES

On appeal, Gonzalez raises three issues: (1) the trial court erred in granting Hunting's motion for summary judgment because the motion failed to address Gonzalez's failure to warn claim; (2) the trial court erred in granting Hunting's motion for summary judgment because Gonzalez presented sufficient evidence to show that Hunting manufactured the defective retainer nut; and (3) circumstantial evidence rather than expert testimony is sufficient to prove that a defendant manufactured and designed a defective product in a products liability case. We address Gonzalez's second and third issues before reaching his first issue.

## I.   The Sufficiency of the Evidence that Hunting Manufactured the Allegedly Defective Retainer Nut

In his second issue, Gonzalez raises two complaints. Gonzalez first contends that Hunting's traditional summary judgment motion, in which Hunting argues that it cannot be liable under a products liability theory because it did not manufacture or supply the retainer nut at issue, is really a no-evidence summary judgment motion that should be reviewed under the no-evidence standard. Gonzalez next contends

3

that he raised a genuine issue of material fact regarding whether Hunting manufactured the retainer nut and whether it was defective.

## A.  The Appropriate Standard of Summary Judgment Review

We review the trial court's grant of a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious. *Id.*

Gonzalez contends that Hunting's traditional motion for summary judgment is in substance a no-evidence motion and therefore should be reviewed under the no-evidence standard. Because Hunting's traditional and no-evidence motions challenge the same elements of Gonzalez's products liability claims—manufacture and defect—we will assume for purposes of this appeal that the stricter no-evidence standard of review applies.

A party may move for a no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim or defense on which the adverse party bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). When a party moves for both a traditional and no-evidence summary judgment, we first address the no-evidence grounds. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 599 (Tex. 2004). If the nonmovant does not satisfy its burden of production on the no-evidence motion, there is no need to analyze whether the movant satisfied its traditional summary judgment burden. *Id.*

To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Merriman*, 407 S.W.3d at 248. A no-evidence challenge will be

4

sustained when: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id*.

**B.      The Evidence that Hunting Manufactured Retainer Nut**

As noted above, Hunting moved for both traditional and no-evidence summary judgment on Gonzalez's negligence, gross negligence, products liability, and warranty claims on the basis that Hunting did not manufacture, design, or market the retainer nut at issue. On appeal, Gonzalez contends that he presented sufficient evidence to raise a question of fact regarding whether Hunting manufactured the retainer nut at issue and whether it was defective at the time it was manufactured. Because Gonzalez does not direct us to any evidence that Hunting designed or marketed the retainer nut, our discussion is limited to the evidence the Gonzalez contends raises a fact issue that Hunting manufactured the retainer nut.

"A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury." *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989). It is not sufficient to show that the seller merely introduced products of similar design and manufacture into the stream of commerce. *Alarcon v. Alcolac Inc.*, 488 S.W.3d 813, 819 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). The plaintiff must present evidence of probative force that the defendant manufactured or distributed the injuring product. *Id.*

Gonzalez first points to the testimony of Hunting's corporate representative,

5

Richard Smith.[3] According to Gonzalez, Smith testified that similar retainer nuts could have only been made by one of five companies, including Hunting and Baker Hughes. Gonzalez originally sued Baker Hughes, but later dismissed its claims against it. Gonzalez suggests that because the evidence established that the other three companies Smith named did not manufacture the retainer nut, this is more than a scintilla of evidence that Hunting is the manufacturer.

But Smith did not testify that only five companies could have manufactured the retainer nut; he merely named five and testified that those were the companies of which he was aware. Moreover, Gonzalez's expert, Edward Ziegler, explained in his report that "[i]t is common in the industry that that as certain patents expired, as other rights changed, or under various agreements or contracts, several entities have or do manufacture such [setting] tools or their components or replacement parts." Ziegler also confirmed that the type of setting tool at issue "is common in the industry" and is "called or referenced in the industry as a 'Baker Setting Tool,' even when manufactured or distributed years later or over time by others—with latter usage taking on a generic term description—like 'Kleenex' for tissues." Ziegler offered no opinion or evidence that the companies Smith named were the only ones that manufacture similar retainer nuts.

Additionally, Ziegler's testimony is consistent with that offered by Smith in a subsequent affidavit in which Smith explained that Baker Hughes originally held a patent on the design of the setting tool and the retainer nut, but when its patents expired, "numerous companies began manufacturing and marketing products based on the original Baker Hughes design." Smith also stated that "in this industry, once

---

[3] Hunting also designated Smith as a non-retained expert to testify concerning, among other things, "the likely manufacturers of the tools at issue, the design, manufacturing, and proper use of the tools in question, applicable industry standards, and the appropriate standard of care."

patents expire, it is common for other companies, many of them foreign, to utilize drawings and manufacture and sell similar oilfield products."

Thus, contrary to Gonzalez's suggestion, Smith did not testify that there were only five manufacturers of the retainer nut, and it cannot be inferred from that testimony that Hunting must be the manufacturer by process of elimination. Indeed, Ziegler's report supports an inference that it is common in the industry for other companies to manufacture such replacement parts for setting tools. Evidence that Hunting is one of an unknown number of manufacturers or suppliers of retainer nuts, even if some have been ruled out, is not evidence of probative force that Hunting supplied the retainer nut that injured Gonzalez. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (explaining that evidence that is no more than a suspicion or guess is in legal effect no evidence); *Alarcon*, 488 S.W.3d at 825 (holding that some circumstantial evidence that defendant supplied majority of product during relevant time frame was insufficient to raise a genuine issue of material fact that plaintiff was injured by defendant's product in response to no-evidence summary judgment motion).

Gonzalez next argues that Smith expressly conceded the possibility that Hunting manufactured the retainer nut. Prior to his deposition, Smith took detailed measurements and compared the retainer nut at issue to Hunting diagrams. Smith testified at his deposition that the retainer nut had a tapered appearance due to wear that made its overall length inconsistent with Hunting's specifications. However, Smith stated that he could not "rule out" Hunting as the manufacturer and agreed that that it was "possible." Specifically, Smith testified that the retainer nut would be consistent with a Hunting retainer nut if it had been manufactured prior to December 21, 2012 and "had been used in the field for some period of time and had

7

some wear that reduced its overall length."[4]

After Smith testified, Ziegler opined in an affidavit that "the retainer nut in this matter was manufactured by [Hunting] sometime prior to December 21, 2012." Ziegler claimed to rely in part on Smith's testimony and measurements in reaching this opinion, but he directly contradicted Smith's testimony that the only possible way the retainer nut could conform to Hunting's pre-2012 specifications would be if it was worn into its current length.

In his report, Ziegler opined that the retainer nut was not worn but was manufactured with a different thread type: "My opinion is that the subject Disk Retainer is not worn into the relatively-tapered thread shape from use, but was manufactured and distributed with a thread type that is different than the original design of the Baker Setting Tool (or the tool to which the Disk Retainer was 'mated' that day)." Ziegler did not explain how the length of the retainer nut would be consistent with a pre-December 2012 retainer nut manufactured by Hunting if it was not worn, and he did not point to any measurements to support his opinion.

Ziegler also claimed to rely in on the evidence that the other manufacturers Smith had named were ruled out. As discussed above, this evidence is legally insufficient to support an expert opinion, and Ziegler's own report confirms Smith's testimony that it is common for other companies in the industry to manufacture retainer nuts compatible with the Baker Setting Tool. Ziegler offers no other basis for his opinion that Hunting manufactured the retainer nut at issue prior to December

---

[4] Smith explained that in December 2012, Hunting revised its specifications to shorten the length of its retainer nuts, so the retainer nut at issue could not have been manufactured by Hunting after that date. Moreover, Smith testified that any old product in Hunting's inventory was removed and modified to the new specifications, so the retainer nut would have to have been in GE's possession before December 2012. According to Smith, because retainer nuts are considered "consumables" in the industry, it was "highly unlikely" that the retainer nut would still have been in use over a year and a half later. Ziegler did not contradict this testimony.

2012.[5]

The conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment. *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013).[6] An opinion is conclusory and cannot be considered probative evidence if it lacks a factual basis or is made in reliance on a basis that does not support the opinion. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). Expert opinions must be supported by facts in evidence, not conjecture. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003). Courts are not required to ignore fatal gaps in an expert's analysis or assertions. *Elizondo*, 415 S.W.3d at 264.

We conclude that Ziegler's opinion that Hunting manufactured the retainer nut at issue prior to December 21, 2012, is contrary to the evidence on which he purports to rely, lacks factual support, and relies on conjecture and speculation. As such, Ziegler's opinion is conclusory and thus insufficient to create a question of fact to defeat summary judgment. *See id.*; *Alarcon*, 488 S.W.3d at 827 (affirming no-evidence summary judgment for defendant in part because plaintiff's expert testimony was insufficient to raise a fact issue that plaintiff was injured by defendant's product).

Viewing the evidence in the light most favorable to Gonzalez, we conclude that the evidence on which Gonzalez relies is legally insufficient to raise a genuine issue of material fact that Hunting manufactured the retainer nut at issue. We hold

---

[5] We also note that the corporate representative for GE could not identify the manufacturer of the retainer nut at issue or what company it was purchased from.

[6] Although Gonzalez argues that Hunting failed to preserve a challenge to the reliability of Ziegler's opinions by not obtaining a ruling on its objections, no objection is required to preserve a complaint that an expert's opinion is conclusory. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004).

that the trial court would not have erred by granting Hunting's no-evidence summary judgment on all of Gonzalez's claims on this basis.

## II.   Circumstantial Evidence of Manufacture of Defective Product

In his third issue, Gonzalez contends that expert testimony is not required to establish that a defendant manufactured or designed a defective product. To support this assertion, Gonzalez cites generally to *Sipes v. General Motors Corp.*, 946 S.W.2d 143, 155 (Tex. App.—Texarkana 1997, writ denied) (stating that a plaintiff may offer evidence of a product's malfunction as circumstantial proof of a defect but noting that expert testimony is frequently essential to establish a design defect if the design is not "blatantly defective"). But Gonzalez does not identify or discuss the circumstantial evidence on which he allegedly relies to support his contention that Hunting manufactured the retainer nut at issue.

Circumstantial evidence is "indirect evidence that creates an inference to establish a material fact." *See In re Lipsky*, 460 S.W.3d 579, 588–89 (Tex. 2015). Circumstantial evidence may be used to establish any material fact, but the circumstances relied on must have probative force sufficient to constitute the basis of a reasonable inference. *Alarcon*, 488 S.W.3d at 820; *see Ridgway*, 135 S.W.3d at 601. An inference is not reasonable when it is premised on mere suspicion or is susceptible to multiple, equally probable inferences. *Suarez v. City of Texas City*, 465 S.W.3d 623, 634 (Tex. 2015); *see Ridgway*, 135 S.W.3d at 601.

We have already held that Ziegler's expert testimony and the other evidence on which Gonzalez relies is insufficient to raise a genuine issue of material fact, and Gonzalez directs us to no other circumstantial evidence. We therefore overrule Gonzalez's third issue.

## III.    The Unaddressed Failure to Warn Claim

In his first issue, Gonzalez asserts that the trial court's judgment should be reversed because Hunting's summary judgment motion did not address the failure to warn claim raised in Gonzalez's fifth amended petition.

As a general rule, granting summary judgment on a claim not addressed in the motion is reversible error. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011). In *Magee*, the Supreme Court of Texas held that the harmless error rule applies to this type of error. *See id.* (citing Tex. R. App. 44.1(a)). The court concluded that the error is harmless "when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *See id*. at 298.

In this case, because the trial court would not have erred in granting Hunting's no-evidence summary judgment on the basis that Gonzalez had no evidence that Hunting manufactured, designed, or marketed the retainer nut at issue, Hunting could not be liable to Gonzalez on a failure to warn theory. *See id.* We therefore overrule Gonzalez's first issue.

### CONCLUSION

We overrule appellants' issues and affirm the trial court's judgment.


/s/    Ken Wise
       Justice


Panel consists of Justices Wise, Jewell, and Poissant.

11