**Josey P. SYRIE, et vir.,**
**Plaintiffs-Appellants,**

v.

**KNOLL INTERNATIONAL,**
**Defendant-Appellee.**

No. 84–2120.

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1984.

Law Offices of Gilbert T. Adams, Gilbert T. Adams, Jr., Richard J. Clarkson, Beaumont, Tex., for plaintiffs-appellants.

Mehaffy, Weber, Keith & Gonsoulin, James L. Weber, Beaumont, Tex., Brian R. Davis, Austin, Tex., for defendant-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

In this appeal we address the question whether the district court erred in refusing to allow the plaintiff to introduce evidence in support of her negligence theory and in refusing to issue a negligence instruction to the jury. Because evidence of negligence was both adduced and proffered at trial and justified a negligence instruction, we hold that the district court erred. We vacate and remand the case for consideration of whether these errors were harmless.

## I.

In 1980, Josey P. Syrie, a teller at the Beaumont State Bank (now InterFirst Bank of Beaumont), was injured when the back of the teller stool on which she was sitting fell off and the chair rolled out from underneath her. The bank had purchased the chair from a local office supply store. Syrie and her husband brought the instant products liability action against Knoll International, Inc. ("Knoll"), the manufacturer of the chair, in the United States District Court for the Eastern District of Texas on the basis of diversity jurisdiction. The Syries alleged that Knoll was strictly liable under Texas law for any defects in the design, manufacture, or marketing of the teller stool. They also alleged that Knoll was negligent in designing and marketing the chair, failing to warn of the hazard presented by the chair after it had been

sold, and failing to recall and correct the defect in the chair. Knoll answered that Syrie's own negligence caused the accident or, alternatively, Syrie's injuries resulted from the negligence of her employer, the bank, in maintaining the chairs. The Standard Fire Insurance Company intervened, claiming a right of subrogation to any amounts recovered by Syrie to the extent of worker's compensation benefits and medical payments it made to Syrie.

Before trial, Knoll stipulated to the feasibility of alternative designs that would have prevented the backrest from coming loose. At trial, the district court did not permit Syrie to present evidence in support of her negligence claims. The court refused to instruct the jury regarding any of the negligence claims, ruling as a matter of law that negligence was not an issue in the case. The district court did instruct the jury on the strict liability claim and submitted the issue to the jury on a general verdict. The jury returned a verdict in favor of Knoll and the district court entered judgment accordingly. The Syries appeal.

## II.

■ The Syries contend that the district court erred in refusing to allow evidence regarding the negligence claims and in refusing to instruct the jury on negligence. In this diversity action, we look to Texas law governing the substantive issues in this case. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "In Texas, a plaintiff can predicate a products liability action on one or more of at least three theories of recovery: (1) strict liabili-

ty under [Restatement (Second) of Torts] § 402A, (2) breach of warranty under the U.C.C., and (3) negligence." *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 423 (Tex.1984). "The alternative pleading of actions asserting liability for product defects and negligent conduct is a customary and proper method of trial pleading." *Fleishman v. Guadiano,* 651 S.W.2d 730, 731 (Tex.1983) (citing *Signal Oil & Gas Co. v. Universal Oil Products,* 572 S.W.2d 320 (Tex.1978)). There are many cases involving Texas law in which the manufacturer of a product was sued in both strict liability and negligence. *E.g., Foster v. Ford Motor Co.,* 616 F.2d 1304 (5th Cir.1980); *Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867 (Tex.1978), *on remand* 599 S.W.2d 633 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.).

■ To make out a strict liability cause of action, a party must establish that: (1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user.[1] A defective product is one that is unreasonably dangerous, i.e., dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics. *See Turner v. General Motors Corp.,* 584 S.W.2d 844, 850 (Tex.1979); *Signal Oil & Gas Co. v. Universal Oil Products,* 572 S.W.2d 320 (Tex.1978); *see also* 3 State Bar of Texas, Texas Pattern Jury

---

**1.** In *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967), the Texas Supreme Court adopted the rule of strict liability embodied in the Restatement (Second) of Torts § 402A (1965), which provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if

    (a) The seller is engaged in the business of selling such a product, and

    (b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) The seller has exercised all possible care in the preparation and sale of his product, and

    (b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

*See generally* Sales & Perdue, *The Law of Strict Tort Liability in Texas,* 14 Hous.L.Rev. 1 (1976).

Charges PJC 71.01, 71.02 (1982); Restatement (Second) of Torts § 402A comment i (1965). In assessing whether a product is unreasonably dangerous as designed, a jury may take into account the utility of the product and the risk involved in its use. *Turner,* 584 S.W.2d at 847 n. 1. "A manufacturer is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product." *Acord v. General Motors Corp.,* 669 S.W.2d 111, 113 (Tex.1984); *see Shamrock Fuel & Oil Sales Co. v. Tunks,* 416 S.W.2d 779 (Tex.1967); Keeton, *Torts, Annual Survey of Texas Law,* 34 Sw.L.J. 1, 9–10 (1980).

■ A negligence cause of action requires a different showing from a strict liability claim, even when the action is against the manufacturer. *Gonzales,* 571 S.W.2d at 871. Although a negligence claim and a strict liability claim may share certain similar or common elements, they involve two separate theories of recovery. *Rourke v. Garza,* 530 S.W.2d 794, 800 (Tex.1975). The Texas Supreme Court has explained the distinction:

> The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

*Gonzales,* 571 S.W.2d at 871; *see also* Keeton, *supra,* at 11–12. The district court recognized this distinction in instructing the jury on strict liability. Record Vol. II at 293.

Texas has adopted Sections 395 and 398 of the Restatement (Second) of Torts as the standard of care required of a manufacturer in the design and manufacture of its products. *Gonzales,* 571 S.W.2d at 871–72; *Otis Elevator Co. v. Wood,* 436 S.W.2d 324, 327 (Tex.1968). Section 395 provides:

> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

Section 398, a special application of the rule in Section 395, provides:

> A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.

■ A plaintiff must establish the following elements to sustain a negligence claim against a manufacturer: (1) the manufacturer owed a duty to the plaintiff; (2) the manufacturer breached that duty; (3) the plaintiff was injured; and (4) the breach of duty was a proximate cause of the injury.

> Generally, a person who manufactures or supplies a product owes a duty of reasonable care to users of the product and to those in the foreseeable zone of danger. These suppliers must exercise reasonable care to prevent physical harm that can reasonably be foreseen to result from the use of the product for its intended purpose, and they must take reasonable care to discover the dangerous propensities of the product and to warn those who might be endangered by it.

W. Dorsaneo, Texas Litigation Guide § 320.03[1] (1984). "[I]t is a negligence concept that permits the introduction of evidence on the care exercised in the manufacturer's selection of the design." Special

Project, *Texas Tort Law in Transition*, 57 Tex.L.Rev. 381, 477 (1979).

The Syries argue that the district court erred in refusing to allow evidence of negligence and in refusing to instruct the jury on negligence. They contend that certain evidence that was admitted and their offer of proof would provide a sufficient basis from which the jury could conclude that the chair was negligently designed or marketed by Knoll.

■ Knoll responds that, negligence having not been raised, the district court could not err by excluding irrelevant testimony and suppressing inapplicable legal theories. But this contention ignores the Syries' incorporation of a negligence claim into the pre-trial order, an incorporation that amends the previous pleadings to state a negligence claim. Fed.R.Civ.P. 16; 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1526 (1971 & Supp. 1984). Thus, Knoll is incorrect in ignoring the pre-trial order's amendment of the pleadings to include a negligence claim.

Knoll also contends that the district court's refusal to instruct the jury on negligence is supported by our decision in *Foster v. Ford Motor Co.*, 621 F.2d 715 (5th Cir.1980). In *Foster*, the decedent's widow and children brought a wrongful death action against the manufacturer of a truck based on strict liability, negligence, and breach of warranty, claiming that the truck's suspension system was defective. The district court refused to instruct the jury on negligence because the proof in the case was directed primarily to the issue whether the product was unreasonably dangerous. The manufacturer's conduct in designing the suspension system had not been raised, the *Foster* court observed, especially in the light of the manufacturer's concession that a redesigned system was feasible at the time of the accident. *Id.* at 719. The district court must have relied on *Foster* in proceeding as it did in the instant action.

In refusing to allow evidence regarding a better design of the chair, the district court observed:

There is no way as a matter of law that this company could be negligent if the chair was not unreasonably dangerous. Correct? The Jury is going to have to decide whether or not the chair was unreasonably dangerous. If they decide it was unreasonably dangerous, your client is going to be entitled to a verdict of this Jury.... I have no intention at this point of submitting the issue of negligence at all to the Jury. They are going to make a determination of the design case as it has been filed.

If they find the chair was not unreasonably dangerous, then they couldn't as a matter of law have been negligent. If they find it was unreasonably dangerous, then you're entitled to a verdict regardless.

So the question of negligence is completely superfluous to this case, as I see it, and that's the way I intend to submit it.

Record Vol. II at 195–96. The court later found as a matter of law that the Syries' negligence claims all dealt with whether the chair was unreasonably dangerous and, thus, the case would be submitted solely as a defective design case. *Id.* at 286. The court explained its ruling:

[E]ach area of negligence that the plaintiff sought to prove related to the product, related to the condition of the product and how and why it might have been the way it was. And there is no way that a jury could have found for the plaintiff without finding that the product was, in fact, dangerous or defective, unreasonably dangerous.

Regardless of their conduct, if it was a safe product, then any negligence on their behalf could not have been a proximate cause of any injury [Syrie] sustained, and if the product is defective and unreasonably dangerous, then regardless of their negligence, [the Syries are] entitled to a verdict, and there was no evidence offered or presented that related to conduct other than that which dovetailed into the condition of the product to

submit to the jury and that's the reason I wanted the record clear.

*Id.* at 332. Hence, as in *Foster*, the district court found that the focus of the inquiry in the instant case was the condition of the product and not the conduct of Knoll in designing and manufacturing the product. In summary, the district court reasoned that the Syries could not recover under a negligence theory unless the teller stool was found to be unreasonably dangerous in which case the Syries could recover under a strict liability theory. Hence, the district court concluded, the negligence claim was superfluous and a negligence instruction unwarranted.

The rationale of the district court disregards the notion that, under Texas law, strict liability and negligence, although sharing similar and common elements, are two entirely separate theories of recovery in a products liability action. A finding of negligence is not required before a manufacturer can be held strictly liable. *Rourke*, 530 S.W.2d at 800. A manufacturer may be liable although it has exercised every possible degree of care if its product is nevertheless unreasonably dangerous. *Id.* at 801. In *Gonzales*, a case involving the negligent design of a tractor to be operated in muddy, off-road areas, the Texas Supreme Court held that the evidence was sufficient to create a jury issue of negligent design as well as strict liability. The evidence included testimony that the manufacturer had not performed tests on the tractor's step and that the manufacturer had violated its own written design guidelines in failing to coat the step with anti-skid material. *See also Foster v. Ford Motor Co.*, 616 F.2d 1304 (5th Cir.1980) (manufacturer, who was sued by injured operator of tractor that was modified by attachment of hayfork, could sue welder who made modification for contribution based on strict liability and negligent design). In *Gross v. Black & Decker, Inc.*, 695 F.2d 858 (5th Cir.1983), a case involving an injury to the operator of a radial saw from which a guard had been removed, the district court allowed the case to go to the jury on both a strict liability theory and a

negligent marketing theory. Frequently, much of the evidence that establishes a jury question of strict liability will establish a jury question of negligent design or marketing. *E.g., Foster*, 616 F.2d at 1312. Only when the plaintiff has failed to submit sufficient evidence concerning the manufacturer's conduct in designing, manufacturing, or marketing a product should the court refuse to instruct the jury on a theory of the case presented in the pleadings. *See Foster*, 621 F.2d at 717, 719.

■ The question, then, is whether there was evidence or an offer of proof from which the jury could conclude that the teller stool was negligently designed or marketed by Knoll. In other words, as we posed the issue in *Foster*, was the issue of Knoll's conduct in designing or marketing the chair ever raised? Based on the evidence adduced at trial and on the offer of proof, we hold that the issue of Knoll's conduct was raised, that the proffered evidence should have been admitted and that a negligence instruction was justified.

Before trial, Knoll stipulated to the feasibility of design alternatives. Further, during the course of the proceedings below, Knoll stipulated that there were means of constructing the teller stool that would have made Syrie's injury impossible and yet would not have interfered with the function of the chair. Record Vol. II at 231.

James M. Williams, Knoll's quality assurance manager, testified that, at the time the teller stool was manufactured, there were no government or industry standards which dictated features, safety or otherwise, to be incorporated into the design of the chair. He further testified that two design changes were made to the chair subsequent to the manufacture and marketing of the chair but prior to Syrie's injury. Each of the changes—the lengthening of a bolt and the addition of a fastener—had the effect of making it more difficult for the backrest of the chair to come off. Because Knoll had stipulated to the feasibility of alternative designs that would

have prevented the backrest from falling off, the district court did not allow the Syries' counsel to elicit testimony from Williams to establish that a better chair could have been designed. Nevertheless, on cross-examination, Knoll's counsel elicited testimony from Williams to the effect that Knoll conducted a "back fatigue" test on the chair before it was marketed. The purpose of the test was to determine "whether the chair is performing as it should perform in the field." *Id.* at 198–99. Williams testified that, to the company's knowledge, Syrie's complaint was the second associated with this particular chair model though 10,000 chairs had been produced. Williams further testified as to Knoll's procedure for receiving consumer complaints and effecting design changes in response to those complaints.

There was testimony from James Brennan, a consulting engineer and professor of industrial engineering at Lamar University, concerning the proper method for designing a product. He testified that the design of the chair and the testing performed on the chair were inadequate, and that incorporation of safety devices, such as fasteners, guard pins, and lock washers, was a fundamental principle of design. Again, because of Knoll's stipulation to the feasibility of alternative designs, the district court pretermitted inquiry into whether there were alternative ways of designing and producing the chair that would have prevented the backrest from falling off. *Id.* at 231.

The Syries' counsel made the following offer of proof:

Dr. Brennan, if he had the opportunity, would have testified that the defendant manufacturer was negligent in the manufacture of the chair at the time of the manufacture and subsequent to the manufacture. This negligence continued up until the time of the plaintiff's injury. That such negligence involves the negligence in design [and] in marketing and the failure, the negligent failure to recall

the product or to take steps after the product had been introduced into the chain of commerce to correct the negligent design. And that such was a proximate cause.

*Id.* at 337.

It is well established that a "jury should be instructed on a legal theory only if the evidence adduced at trial is sufficient to justify such an instruction." *Foster,* 621 F.2d at 717; *see Wells v. HICO Independent School District,* 736 F.2d 243, 251–52 (5th Cir.1984); *Lyle v. Bentley,* 406 F.2d 325, 327 (5th Cir.1969). We hold that there was sufficient evidentiary support to justify an instruction regarding Knoll's negligence in designing or marketing the teller stool and that the district court erred in refusing to instruct the jury on negligence.

We have resolved that the refusal to permit evidence of negligence was error, as was the failure to instruct the jury on negligence.[2] The issue of harmless error was not raised before us and we have not considered it. We do not pretermit the issue from being raised below and we remand the case to the district court in order for the parties to address the issue. This will require the parties and the court to consider the theoretical and practical distinctions between a negligence action and a strict liability action under Texas law in the light of the jury's general verdict in favor of Knoll.

### III.

The Syries also claim that Knoll was negligent in failing to warn of the hazards discovered years after the chair had been manufactured and sold and in failing to recall the chairs to correct these deficiencies. The Syries cite to no case, nor has our research discovered any, which holds that the scope of a manufacturer's duty extends so far. Under Texas law, "[a] manufacturer may be held liable for harm, if that manufacturer negligently manufactures a product which, unless care-

2. We do not agree with the Syries' further contention that the district court's ruling in open

court, though erroneous, amounted to a comment on the case that prejudiced the Syries.

fully made, involves an unreasonable risk of causing harm to those who use it for its intended purpose and to those whom the manufacturer should expect to be endangered by its probable use." W. Dorsaneo, *supra*, § 320.03[2]. The failure to warn about risks posed by a product at the time it is manufactured and sold may form the basis for imposing liability on a manufacturer. *E.g., Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801 (Tex.1978). But Texas courts have apparently not established a cause of action for a failure to warn about hazards discovered after a product has been manufactured and sold.

In a strict liability context, one Texas court has held that the combination of the existence and commercial availability of a superior tail rotor system to that incorporated in a line of helicopters plus the manufacturer's knowledge that the existing rotor system was being mishandled by owners and operators constituted sufficient evidence for a jury to have found that, after the new tail rotor system became available, the mere presence of the older system rendered the helicopters unreasonably dangerous. *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). On its face, *Bradshaw* might be said to evince a broadening of the manufacturer's standard of care to include a duty to issue warnings or recall products once the manufacturer produced a design known to be safer than one employed previously.[3] Such a reading of the case disregards the essential finding that the manufacturer, having lost control of the helicopters when originally placed in the stream of trade, regained a significant degree of control for products liability purposes when the helicopter was purchased by an authorized service station of the manufacturer. The manufacturer failed in its duty to cause the replacement of the tail rotor systems and to properly warn about

their continued use but that duty only arose after it had regained some measure of control over the product that would reasonably permit it to take such measures. The *Bradshaw* court expressly declined to adopt a rule imposing a continuing duty on a manufacturer to improve his product or to remedy dangerous latent defects in the design of a product. *Id.* at 531–32. In criticizing the *Bradshaw* holding that the manufacturer of the helicopter had a duty to use reasonable means available to cause the replacement of the tail rotor systems once it had assumed such a duty, one commentator observes: "No authority is cited by the court, and none exists for the proposition that, once a manufacturer designs and markets an improved component for its new products, it then assumes a duty to complete the remedy by causing the substitution of the improved component in used products that are already on the market." Comment, *Products Liability: Manufacturer's Liability for Products Not Unreasonably Dangerous When Originally Marketed*, 12 St. Mary's L.J. 494, 522 (1980). We do not find the *Bradshaw* holding and the criticism to be necessarily inconsistent. Thus, although a manufacturer's liability for a post-marketing failure to warn or to recall products that the state of the art has made defective is cognizable under a negligence theory, *cf. Braniff Airways, Inc. v. Curtiss-Wright Corp.*, 411 F.2d 451, 453 (2d Cir.1969), to our knowledge, no Texas court has recognized a post-marketing duty on the part of a manufacturer to warn or recall its products absent the element of regained control suggested in *Bradshaw*.

In the instant action, the Syries have offered no evidence that Knoll regained any measure of control over the chairs after they were marketed in 1971. Because Texas does not impose on manufacturers the duty to warn about or to

---

**3.** In *Bradshaw,* the court weaves negligence concepts into its discussion of the strict liability issue. Later, in addressing the negligence claim, the court states that a manufacturer has a duty to remedy defects in a product discovered after manufacture and sale only when he assumes such a duty, presumably by regaining a measure of control over the product. 594 S.W.2d at 532. Thus, the court interjects an element of § 402A strict liability, viz., control, into negligence concepts as they relate to manufacturers.

recall products for which a safer design has been developed, we find that the district court did not err in refusing to instruct the jury on negligence regarding a manufacturer's post-marketing failure to warn or recall.

## IV.

For these reasons, we vacate the judgment of the district court and remand the case for proceedings consistent with this opinion. Knoll shall bear the costs of this appeal.

VACATED and REMANDED.