Brenda J. HAYLES, Plaintiff,

v.

GENERAL MOTORS CORPORATION,
Defendant.

No. CIV. A. H–98–0598.

United States District Court,
S.D. Texas,
Houston Division.

June 21, 1999.

Gerald Kendrick Payte, Houston, TX, for Brenda J Hayles, plaintiff.

Carmody Cronin Baker, Fulbright & Jaworski, Houston, TX, for General Motors Corporation, defendant.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

Brenda J. Hayles sued General Motors Corporation after she was injured in a single-vehicle accident. She alleged that the air bag and seat belt systems were defectively designed or manufactured and made the vehicle uncrashworthy. Hayles asserted causes of action for strict liability, negligence, and breach of warranty. General Motors moved for summary judgment and submitted detailed affidavits from three experts on the design and manufacture of the air bag and seat belt systems at issue. These experts all concluded that there was no defect that caused Hayles' injuries. Hayles filed a terse response to General Motors' motion, consisting of her own brief affidavit describing her recollection of the accident and her injuries. She also submitted an excerpt from the vehicle owner's manual describing the air bag. Plaintiff did not designate an expert under Federal Rule of Civil Procedure 26(a)(2). Plaintiff submitted no evidence from any expert witness in response to the summary judgment motion.

The issue presented in this summary judgment motion is whether defendant is entitled to summary judgment because plaintiff has failed to provide competent summary judgment evidence to controvert the evidence from defendant's experts that there was no product defect that contributed to plaintiff's injuries. Defendant asserts that because plaintiff failed to submit competent evidence to raise a fact issue on defect and causation, summary judgment is required.

## I. Factual Background

On February 2, 1996, Hayles lost control of her 1995 Chevrolet Silverado while driving on an icy freeway overpass in Houston, Texas. She hit a concrete wall. On January 29, 1998, Hayles sued General Motors in the 334th Judicial District Court in Harris County, Texas, alleging that she was "injured when the airbag restraint system failed to deploy during a frontal collision." (Docket Entry No. 13, Ex. 1, ¶ III). Hayles asserted causes of action for strict liability, negligence, and breach of warranty. She alleged that the "products," de-

fined as "including airbag restraint systems and the motor vehicles in which they are installed," were "negligently, defectively designed so as to render them unreasonably dangerous .... A safer alternative design existed at the time the products were manufactured." (*Id.*, ¶¶ II, V). Hayles also alleged *res ipsa loquitur* as the basis for her claim of negligent design and manufacture. (*Id.*, ¶ VII).

The only allegation as to seat belts in Hayles' petition is that she "sustained serious personal injuries when her body struck the interior of the vehicle and the shoulder and lap belts retained her momentum." (*Id.*, ¶ VIII).

General Motors removed the suit to this court on February 27, 1998, on the basis of diversity of citizenship. After discovery closed and the deadlines for designating expert witnesses passed, on April 12, 1999, General Motors moved for summary judgment. General Motors asserted that the undisputed facts disclose no genuine issue of material fact as to the absence of a defect in the air bag or seat belt systems in Hayles' vehicle that caused her injuries.

General Motors submitted detailed summary judgment evidence to support its assertion that there was no evidence of defect or causation.

● Ronald Orlowski, a Staff Analysis Engineer in the Product Analysis Department at General Motors, submitted an affidavit and a report. Orlowski, a mechanical engineer with 36 years of automotive design experience, including experience in vehicle impact crashworthiness, examined Hayles' vehicle, including the seat belt system. Orlowski also reviewed the police report, photographs of the truck, medical reports, a transcript of Hayles' deposition, and General Motors' documents relating to the seat belt system. Orlowski inspected and tested the seat belt to determine whether the system worked as designed. Orlowski performed functional tests, a static test, and a dynamic test on the lap/shoulder seat belt system. He concluded that the seat belt system, including the retractors and buckle assembly, worked properly, was properly installed, and was in the design position. Orlowski concluded that the system was designed to exceed the "requirements of all applicable Federal Motor Vehicle Safety Standards," was "a reasonably safe system," functioned properly, and did not cause any "enhanced injuries to Mrs. Hayles." Orlowski concluded that in his expert opinion, the lap/shoulder belt system in Hayles' vehicle functioned properly at the time of the accident. (Docket Entry No. 13, Ex. 6–B).

● Brian Everest, a Product Engineer in the Product Analysis Department at General Motors, is trained as an electrical engineer. Since 1989, he has worked at General Motors and is familiar with air bags generally and the particular air bag system at issue. In addition to inspecting Hayles' vehicle and examining the police report, photographs, and plaintiff's deposition, Everest also reviewed General Motors' crash tests. Everest's vehicle inspection included an examination of the internal record of the air bag sensor for Hayles' vehicle. Everest stated that the air bag system is designed to deploy when the sensor records frontal impact forces sufficiently high to meet a threshold for deployment. The sensor also records "fault codes" if the air bag system malfunctions. Everest concluded that the vehicle air bag record showed no evidence of any malfunction. He also noted that the Hayles vehicle had "contact damage" only at the left side of the front bumper and "induced" damage "along the left fender only to about the wheel well." The hood was not crumpled; the grill suffered only minor damage; and the headlights were not broken. The physical evidence showed a glancing blow to the left front side of the truck, at an angle and speed below the threshold for air bag deployment. Everest concluded that the air bag was designed properly; functioned as designed; and should not have de-

ployed. (Docket Entry No. 13, Ex. 7, Affidavit of Brian J. Everest, p. 3). Everest concluded that the "collision made the basis of this case did not warrant air bag deployment and the air bag system in the plaintiff's truck functioned as designed and manufactured by not deploying during the collision." (*Id.*).

• Tawfik B. Khalil, a Senior Engineer in the General Motors North American Operations Engineering Center, has a doctorate in mechanical engineering and has worked for General Motors since 1973. Khalil works in developing technology for designing and analyzing occupant restraint systems and occupant responses to vehicle crashes. Khalil analyzed the police report, photographs of the vehicle, the medical records and plaintiff's deposition, barrier crash tests of similar trucks, and photographs of an exemplar truck with a surrogate in the driver's seat. Khalil concluded that Hayles' injuries "would not have been avoided, and were not enhanced, by air bag deployment"; to the contrary, she would have received more severe injuries had the air bag deployed. Khalil described Hayles' injuries from the medical records, including bruises on her chest, right knee tenderness, nose bleed and cut to lower lip, and pain to the right inguinal area. Khalil noted Hayles' statement that she was wearing a seat belt, but noted that her injuries were more consistent with a lack of restraint. He concluded that the air bag and seat belt system in the plaintiff's vehicle functioned as designed; the non-deployment of the air bag did not enhance the plaintiff's injuries; and the injuries would not have been avoided by the deployment of the air bag. (Docket Entry No. 13, Ex. 8, Affidavit of Tawfik B. Khalil, p. 3).

In her response, Hayles submitted her own affidavit. She stated that she was wearing her seat belt at the time of the accident but that it did not prevent her from hitting her mouth on the steering wheel, then being thrown back against the seat. She asserts that the collision "knocked my jaw out of socket" and strained her neck. (Docket Entry No. 15, Affidavit of Brenda J. Hayles). Hayles stated that she was traveling approximately 45 to 55 miles per hour when she hit the concrete wall with the left front of her vehicle. She attached a copy of the vehicle owner's manual page describing the air bag, which states that the air bag is "designed to inflate in moderate to severe frontal or near-frontal crashes. . . . If your vehicle goes straight into a wall that doesn't move or deform, the threshold level is about 12 to 16 mph." (*Id.*, Attachment). General Motors responds by pointing to evidence that the vehicle did not go "straight into a wall," but rather struck a glancing blow to the left front side of the truck.

General Motors argues that it has presented uncontroverted summary judgment evidence that the seat belt system and air bag had no defect in design or manufacture that caused Hayles' injuries. General Motors asserts that Hayles' response is inadequate to raise a fact issue as to either of these elements that would preclude summary judgment.

## II. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Substantive law identifies the facts that are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine only if the evidence in the summary judgment record suffices for a reasonable fact-finder to return a verdict in favor of the nonmoving party. *Id.* The inquiry at the summary judgment stage of litigation is whether the evidence disclosed in the summary judgment record presents a sufficient disagreement to require submission to the factfinder or whether it is so one-sided that the moving party must prevail as a matter of law. *Id.* at 251–52, 106 S.Ct. 2505.

Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The operation of the summary judgment standard depends on which party bears the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. If, as here, the defendant is moving for summary judgment and is not the party with the burden of proof at trial, then the defendant must affirmatively offer evidence that undermines one or more of the essential elements of the plaintiff's case, or must demonstrate that the evidence in the summary judgment record falls short of establishing an essential element of the plaintiff's case. If the defendant does so, then the plaintiff, as the nonmoving party, must point to evidence in the summary judgment record sufficient for a reasonable fact finder to decide in her favor. A scintilla of evidence, conclusory allegations, speculation, and unsubstantiated assertions will not carry this burden. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996)(en banc); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Little*, 37 F.3d at 1075. When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325, 106

S.Ct. 2548). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## III. The Strict Liability Claim

Texas has adopted the strict products liability standard set forth in section 402A of the *Restatement (Second) of Torts*, which provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

RESTATEMENT (SECOND) OF TORTS § 402A; *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334–35 (Tex.1998).

■ Hayles has the burden of showing that the products were defective and unreasonably dangerous and that the danger-

ous condition was a producing cause of her injury. "The first prong of this test may be satisfied by evidence of a defect in the [products'] manufacture, design, or marketing." *Oser v. Wal–Mart Stores, Inc.*, 951 F.Supp. 115, 118 (S.D.Tex.1996) (citing *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 377 (Tex.1984)). "A defectively designed product is one that is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." *Dico Tire, Inc. v. Cisneros*, 953 S.W.2d 776, 783 (Tex.App.— Corpus Christi 1997, writ denied) (citing *Turner v. General Motors Corp.*, 584 S.W.2d 844, 847 n. 1, 851 (Tex.1979)). "Design defect cases are not based on consumer expectancy, but on the manufacturer's design of a product which makes it unreasonably dangerous, even though not flawed in its manufacture." *Id.* (citing *Ford Motor Co. v. Pool*, 688 S.W.2d 879, 881 (Tex.App.—Texarkana 1985), *aff'd in part on other grounds, rev'd in part on other grounds*, 715 S.W.2d 629 (Tex.1986)). Design defect claims are evaluated in light of the economic and scientific feasibility of safer alternatives. *Uniroyal*, 977 S.W.2d at 335; *Dico Tire*, 953 S.W.2d at 783 (citing *Caterpillar Inc. v. Shears*, 911 S.W.2d 379, 383–84 (Tex.1995)).

■ In a manufacturing defect case, "the plaintiff must show a manufacturing flaw which renders the product unreasonably dangerous; that the defect existed at the time the product left the seller, and that the defect was the producing cause of the plaintiff's injuries." *Dico Tire*, 953 S.W.2d at 783 (citing *Pool*, 688 S.W.2d at 881; *Fitzgerald Marine Sales v. Leunes*, 659 S.W.2d 917, 918 (Tex.App.—Ft. Worth 1983, writ dism'd)); *see also Uniroyal Goodrich Tire Co. v. Martinez*, 928 S.W.2d 64, 69 (Tex.App.—San Antonio 1995) (citing *Restatement (Second) of Torts* § 402A (1965)), *aff'd*, 977 S.W.2d 328 (Tex.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). "[A] plaintiff has a manufacturing defect claim when a finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that ren-

ders it unreasonably dangerous." *Robins v. Kroger Co.*, 982 S.W.2d 156, 160 (Tex. App.—Houston [1st Dist.] 1998, writ requested).

"The concept of defect is considered central to any products liability action, whether the alleged defect occurs in the design, manufacturing, and/or marketing of the product." *Rodriguez v. Hyundai Motor Co.*, 944 S.W.2d 757, 769 (Tex.App.—Corpus Christi 1997) (citing *Turner v. General Motors Corp.*, 584 S.W.2d 844, 847 (Tex. 1979)), *rev'd on other grounds, Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661 (Tex.1999) (slip copy); *see also Patterson v. Rohm Gesellschaft*, 608 F.Supp. 1206, 1211 (N.D.Tex.1985) ("There can be no valid products liability claim without a product which has a defect.").

■ In moving for summary judgment, General Motors presented evidence from three experts, whose qualifications and reliability are not challenged. The experts each testified that the air bag and seat belt systems in Hayles' vehicle were properly designed, properly manufactured, and functioned properly. These experts concluded that the collision between Hayles' vehicle and the concrete wall was not of sufficient severity or at an angle that would trigger the deployment of the air bag. The experts concluded that neither the air bag's nondeployment nor the operation of the seat belt system enhanced Hayles' injuries.

In *Celotex* terms, General Motors, the moving party, has affirmatively offered evidence that undermines both the defect and causation elements of the plaintiff's strict liability cause of action and has shown an absence of evidence sufficient to show defect or causation. The burden shifts to Hayles to point to evidence in the summary judgment record sufficient for a reasonable fact finder to decide in her favor.

■ Hayles responds with an assertion that the air bag should have deployed because when she hit the concrete wall after

losing control of the vehicle and skidding on an icy road, the vehicle was traveling at 45 to 55 miles per hour. She states that she was wearing her seat belt, but still hit the steering wheel. Hayles argues that she need not provide expert testimony to establish a disputed issue of material fact as to whether the air bag and seat belt systems were defective. "Under Texas Law lay testimony of the malfunction of a product in a situation in which the product is designed to perform, is sufficient, without expert testimony, to raise a genuine issue of material fact as to whether or not there was a manufacturers defect." (Docket Entry No. 15, p. 2).

Hayles cites *Sipes v. General Motors Corp.*, 946 S.W.2d 143 (Tex.App.—Texarkana 1997, writ denied), which also involved an air bag that did not deploy. The defendants in *Sipes* produced an expert witness who testified that the impact force was insufficient to trigger the air bag deployment. The expert did not, however, "set forth any standard for deciding how great the force must be to deploy the air bag, such as some measurement of the impact or the speed at which the vehicles were traveling." *Id.* at 153. The plaintiffs did not designate an expert witness, but instead testified that the collision occurred near the front of the car; that the driver sustained severe injuries that were to receive protection from the air bag; and that the impact may have been sufficient to trigger the deployment of the air bag system. The court of appeals found a genuine issue of material fact as to whether the force and impact were insufficient to trigger the deployment or that there was no defect in the product. *Id.* at 153–54.

General Motors points out that the *Sipes* decision was decided under a state law summary judgment standard that is no longer law in Texas. Effective September 1, 1997, the Texas Supreme Court adopted Texas Rule of Civil Procedure 166a(i)—the "no-evidence" motion-which "brings Texas closer to federal summary judgment practice." *See* Robert W. Clore, Comment, *Texas Rule of Civil Procedure 166a(i): A New Weapon for Texas Defendants*, 29 ST.

MARY'S L.J. 813, 814 (1998). *Sipes* was decided in May 1997, under the summary judgment standard requiring the movant to carry the burden of proving that "no genuine issue as to any material fact existed." In *Sipes*, the defendant's expert had presented no evidence as to the severity of the impact and whether the air bag should have deployed. Under the summary judgment standard then in force, the plaintiffs' evidence was sufficient for the court to find that the defendants "ha[d] not proven as a matter of law that the force and impact were insufficient to trigger the designed deployment of the air bag or that there was no defect in the product. Therefore, the movants are not entitled to a summary judgment on this basis." *Sipes*, 946 S.W.2d at 153–54.

In this case, contrary to the facts in *Sipes*, General Motors has produced competent summary judgment evidence as to the angle and severity of the impact between the plaintiff's vehicle and the object it hit. Contrary to the legal standard applicable in *Sipes*, in this case, the nonmovant had the burden of providing more than conclusory allegations, speculations, and unsubstantiated assertions to respond to the expert evidence. Hayles' estimate of her speed at the point of impact and the excerpt from the General Motors owner's manual are the only evidence she offers to support her allegation that the air bag was defective because it did not deploy. Her estimate of the speed at impact is conclusory and unsubstantiated. She offers no competent evidence as to the angle of the impact. She offers no competent summary judgment evidence to contradict the physical evidence described in the experts' affidavits that the impact at issue was not a direct frontal impact, but rather a glancing blow to the left fender.

The page from the owner's manual defeats rather than supports the position Hayles asserts. Hayles points to the language in the manual stating that in a direct frontal impact with an immovable object, a speed of between 12 to 16 miles

per hour is likely to trigger deployment. However, the manual page states that air bag deployment depends on both the angle and speed of a collision. The manual states that the air bag is designed to inflate "in moderate to severe frontal or near-frontal crashes." (Docket Entry No. 15, Owner's Manual, p. 1–21). The manual also states that the "air bag will inflate only if the impact speed is above the system's designated 'threshold level.' If your vehicle goes *straight into a wall* that doesn't move or deform, the threshold level is about 12 to 16 mph .... The threshold level can vary, however, with specific vehicle design, so that it can be somewhat above or below this range." (*Id.* (emphasis added)). The manual states that "[i]nflation is determined by the angle of the impact and the vehicle's deceleration." (*Id.*). The manual also states that the air bag is not designed to inflate in a side impact.

Hayles has failed to raise a genuine disputed issue of material fact that her vehicle sustained the type of impact necessary to deploy the air bag. She offers nothing but speculation and unsubstantiated allegations that the air bag was defective because it failed to deploy. Hayles has failed to raise a fact issue as to a defect in the air bag in the vehicle that enhanced her injuries.

Nor has Hayles raised a fact issue as to a defect in the seat belt system. Her only allegation in the petition is a fleeting reference to the seat belt that "retained her momentum." Her only summary judgment evidence, responding to the detailed evidence of inspections and testing from General Motors' expert witnesses, is her statement that she was wearing a seat belt but nonetheless hit the steering wheel. Although the record does disclose a fact issue as to whether Hayles was wearing her seat belt at the time of the collision, the record does not disclose a fact issue as to whether the seat belt was defective in design or manufacture. To the contrary, General Motors introduced competent summary judgment evidence that the seat belt system was properly designed, manufactured, and installed. Hayles' allegation and evidence do not raise a disputed fact issue as to either defect or causation.

In *Selig v. BMW of N. Am., Inc.*, 832 S.W.2d 95, 100 (Tex.App.—Houston [14th Dist.] 1992, no writ), the court of appeals faced facts similar to those at issue in this case. Plaintiffs alleged that six months after purchasing a new BMW, the car "suddenly accelerated as she attempted to stop at a donut shop, causing the BMW to collide with a parked vehicle and the side of the building." *Id.* at 98. Plaintiffs sued BMW, alleging strict liability, breach of warranty, and several statutory causes of action. BMW moved for summary judgment. To support its motion for summary judgment, BMW attached two affidavits from an expert witness, who testified that "in his expert opinion the components of appellants' BMW 325 could not malfunction 'so as to cause the car to accelerate suddenly and unexpectedly while [plaintiff] pressed the brake pedal, as she has claimed in her deposition.'" *Id.* at 99. Inspections revealed that the brakes were in proper operating condition; the expert testified that, based on these inspections, the braking system would stop the vehicle even if the antilock braking system completely failed. *Id.* at 99–100. Plaintiffs did not designate experts, but offered the driver's affidavit. The court of appeals found that BMW "met [its] burden of establishing that [plaintiffs] could not succeed on their theory of strict liability and that [BMW was] entitled to judgment as a matter of law as to this cause of action." *Id.* at 100. The court of appeals went on to state that plaintiffs "offered only lay testimony to rebut [BMW's] expert testimony. Lay testimony is insufficient to controvert expert testimony." *Id.* (citing *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991)).

In this case, General Motors has provided competent summary judgment evidence that neither the air bag nor the seat belt in Hayles' car were defective. "To recover under strict liability, a party

must show more than the mere fact that an accident occurred." *Selig,* 832 S.W.2d at 100 (citing *Bass v. General Motors Corp.,* 491 S.W.2d 941, 947 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.)); *see also Hernandez v. Nissan Motor Corp.,* 740 S.W.2d 894, 895 (Tex.App.—El Paso 1987, writ denied) ("The mere fact that an accident occurred is not sufficient proof that the automobile was defective.") (citing *Carroll v. Ford Motor Co.,* 462 S.W.2d 57, 61 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ)).

General Motors' motion for summary judgment as to Hayles' strict liability claim is GRANTED.

## IV. The Negligence Claim

■ "A negligence cause of action focuses on conduct, specifically the quality of the act causing the injury." *Lewis v. Timco, Inc.,* 716 F.2d 1425, 1434 (5th Cir.1983). In a negligence cause of action against a manufacturer for injuries suffered as a result of the manufacturer's product, the plaintiff must establish that: (1) the manufacturer owed a legal duty to the plaintiff; (2) the manufacturer breached that duty; (3) the plaintiff suffered an injury as a result of the breach; and (4) the breach of duty was a proximate cause of the injury. *Mosley v. Excel Corp.,* 109 F.3d 1006, 1009 (5th Cir.1997); *see also Morris v. Adolph Coors Co.,* 735 S.W.2d 578, 584 (Tex. App.—Ft. Worth 1987, writ ref'd n.r.e.) (citing *Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984)). As the basis for her negligence claim, Hayles asserts that the air bag and seat belt were negligently manufactured and designed.

■ Hayles' negligence claims suffer from the same gaps as the strict liability claim, only more so. Hayles' negligence claim is based on the allegedly defective design and manufacture of the air bag and seat belt. In *Garrett v. Hamilton Standard Controls, Inc.,* 850 F.2d 253 (5th Cir. 1988), the Fifth Circuit examined whether the rejection of liability based on strict liability and breach of warranty "pretermits a possible finding of negligence." *Id.* at 256. The Fifth Circuit stated that:

> although a negligence claim requires a different showing from a strict liability claim, a manufacturer logically cannot be held liable for failing to exercise ordinary care when producing a product that is not defective because: (1) if a product is not unreasonably dangerous because of the way it was manufactured, it was not negligent to manufacture it that way and (2) even if the manufacturer was somehow negligent in the design or production of the product, that negligence cannot have caused the plaintiff's injury because the negligence did not render the product "unreasonably dangerous." Thus ... the jury's rejection of strict liability precludes a negligence claim.

*Id.* at 257.[1] The Fifth Circuit noted that the *Restatement (Second) of Torts* § 402A, comment a, states that strict liability does not preclude liability for negligence, "but does not address whether there can be negligence liability when a fact finder has rejected strict liability in a context where that necessarily requires rejection of at least one essential element of the negligence claim." *Id.* at 257 n. 8. The court concluded that when the evidence was "directed entirely to the issue of whether the product was unreasonably dangerous" and the plaintiffs offered no evidence as to other potentially negligent conduct in designing or manufacturing the product, the absence of a defect negated an essential

---

1. The court distinguished *Syrie v. Knoll International,* 748 F.2d 304 (5th Cir.1984), which held that it was error for the district court to refuse to submit the negligence issue to the jury after finding that the product was not unreasonably dangerous. In *Syrie,* the Fifth Circuit stated that strict liability and negligence are two "entirely separate theories of recovery in a products liability action," *id.* at 310, and that the plaintiffs had submitted sufficient evidence concerning the manufacturer's conduct in designing and marketing the product. The court in *Garrett* stated that it "now reach[es] the issue left open in *Syrie,*" and that in *Syrie,* "we had to interpret a general verdict and evidence relevant to negligence had been excluded. Here we face no such difficulties." *Id.* at 257 n. 7.

element of a negligence claim. *See also Sprankle v. Bower Ammonia & Chem. Co.,* 824 F.2d 409, 413 (5th Cir.1987) ("[T]he jury's rejection of [plaintiff's] strict liability theory *necessarily* also constitutes a rejection by the jury of at least one essential factual element of [plaintiff's] negligent failure to warn theory." (emphasis in original)).

Hayles recognizes the lack of any evidence as to potentially negligent conduct. She asserts that because she "cannot more specifically allege the acts of negligent manufacture or design on the part of Defendant," she relies on the doctrine of *res ipsa loquitur* to "show that the character of the occurrence giving rise to this litigation is such that it would not have happened in the absence of negligence, and that the design and manufacture of the product was within the exclusive control of Defendant at the time the negligence probably occurred." (Docket Entry No. 13, Ex. 1, ¶ VII).

 *Res ipsa* is a rule of evidence, not a rule of substantive law. *See, e.g., Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990); *Schorlemer v. Reyes,* 974 S.W.2d 141, 146 (Tex.App.—San Antonio 1998, writ denied). The doctrine allows a plaintiff to show that the circumstances under which an accident or injury occurred constitute sufficient evidence of the defendant's negligence to support such a finding. Two elements must be present before *res ipsa* applies: the character of the accident must be such that it would not ordinarily occur in the absence of negligence; and the instrumentality causing the injury must have been under the management and control of the defendant. Hayles has not alleged or shown that these elements are present here. *Jones v. Tarrant Utility Co.,* 638 S.W.2d 862, 865 (Tex.1982).

"The availability of strict liability has largely alleviated the need to proceed under a *res ipsa loquitur* theory ... prompting the Texas Supreme Court to conclude that 'there would seem to be little, if any, advantage to plaintiffs ... to continue to plead and submit their cases on *res ipsa*

*loquitur.*'" *Garrett,* 850 F.2d at 258 (quoting *Pittsburg Coca–Cola Bottling Works v. Ponder,* 443 S.W.2d 546, 551 (Tex.1969) and citing W.PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 99 (5th ed.1984)). The use of *res ipsa* cannot help a plaintiff when, as here, she is unable to raise a fact issue even under a strict liability theory, which is less onerous to prove. With *res ipsa,* Hayles must show that General Motors negligently designed or manufactured the passenger restraint systems and that the negligence proximately caused her injury. With strict liability, Hayles need only raise a fact issue as to dangerous defect and producing cause, regardless of any negligence. She has shown herself unable on the summary judgment record to meet the burden under strict liability. *Res ipsa* does not rescue her from summary judgment.

General Motors' motion for summary judgment as to Hayles' negligence claim is GRANTED.

## V. The Breach of Implied Warranty Claim

 Hayles asserts that General Motors "impliedly warranted to the public generally and specifically to the Plaintiff, that the defective products were of merchantable quality and were safe and fit for the purpose intended when used under ordinary circumstances and in an ordinary manner." (Docket Entry No. 13, Ex. 1, ¶ VIII). "A plaintiff in an implied warranty of merchantibility case must prove that the good complained of was defective at the time it left the manufacturer's or seller's possession." *Rodriguez v. Hyundai Motor Co.,* 944 S.W.2d 757, 771 (Tex. App.—Corpus Christi 1997) (citing *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 444–45 (Tex.1989)), *rev'd on other grounds, Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661 (Tex.1999) (slip copy). This court has already found that Hayles has not presented competent summary judgment evidence to controvert

General Motors' evidence that the air bag and seatbelt were not defective. Hayles' breach of implied warranty claim fails as a matter of law. *Cf. Hyundai Motor Co.,* 995 S.W.2d at 667–68 ("We hold only that the jury should not be asked to consider the identical defect finding in response to questions relating to strict-liability and breach-of-implied-warranty claims.").

General Motors' motion for summary judgment as to Hayles' breach of implied warranty claim is GRANTED.

## IV. Conclusion

General Motors' motion for summary judgment as to Hayles' strict liability, negligence, and breach of implied warranty claims is GRANTED.